UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | |
|---|---|
| -v.- | 18 Cr. 472-3 (KPF) |
| MICHAEL VILLANUEVA, | **ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

On February 4, 2020, Defendant Michael Villanueva was sentenced by this Court principally to concurrent terms of time served plus three months' imprisonment. Villanueva is serving the remainder of his sentence at the Metropolitan Correctional Center (the "MCC") in Manhattan; his scheduled release date is May 4, 2020. Villanueva has moved for immediate release and/or release to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing the risks to his health occasioned by his continued incarceration at the MCC during the current COVID-19 pandemic. As set forth in the remainder of this Order, the Court grants his motion and orders that the remainder of his sentence be reduced to time served, and that he be released to begin his period of supervised release.

## BACKGROUND[1]

Michael Villanueva was initially indicted on narcotics charges in this District in July 2018. (Dkt. #3). At the time of his arrest, he was a detainee at

---

[1] For ease of reference, Villanueva's letter motion for compassionate release is referred to as "Def. Br." (Dkt. #81); the Government's responsive letter brief of April 6, 2020 as "Gov't Br." (Dkt. #84); and Villanueva's Revised Final Presentence Investigation Report as "PSR" (Dkt. #74).

the Westchester County Jail. (PSR p.2). In November 2018, Villanueva pleaded guilty before this Court to a three-count superseding information charging him with narcotics and firearms offenses. (Dkt. #70). In January 2019, he was released on bail, although he was remanded four months later. (PSR p.2).

Villanueva was sentenced by this Court on February 5, 2020, principally to concurrent terms of time served plus three months' imprisonment, followed by concurrent terms of three years' supervised release. (Dkt. #72). Presumably because of the short period of time remaining on his prison term, the Bureau of Prisons (the "BOP") allowed Villanueva to remain at the MCC for the remainder of his sentence.

On March 31, 2020, counsel for Villanueva filed a motion for compassionate release on his behalf. (Dkt. #81). In it, counsel requested that the Court (i) modify Villanueva's sentence to time served or (ii) immediately release him to home confinement for the remainder of his term of imprisonment to be followed by the previously-imposed term of supervised release. Among other things, defense counsel observed that the COVID-19 virus "thrives in densely packed populations, and the MCC is ill-equipped to

---

To the extent that the Court has dispensed with a lengthy discussion of Villanueva's underlying criminal conduct or his prosecution in this District, or with a lengthy analysis of certain of the legal issues in this case, that brevity should not be misinterpreted as a lack of engagement with these matters. Rather, the Court wishes to expedite resolution of this, an uncontested motion for Villanueva's early release, and therefore presents only what is necessary to its decision. Relatedly, the Court pauses to note its debt to judicial colleagues in this District who have spent much time analyzing the relevant legal issues, and whose analyses aid the Court's own.

contain the pandemic and prevent COVID-19 from becoming a de facto health threat for Mr. Villanueva." (*Id.* at 1; *see also id.* at 6 ("The MCC has disclosed that as of March 25, 2020, nearly one-third of its current population is high-risk within the CDC's definition (205 inmates), creating a powerful likelihood that the coronavirus will spread throughout the facility, and particularly endanger the at-risk inmates, many of whom were already exposed to the virus by an inmate who tested positive and was housed on an open dorm unit with many of the at-risk inmates.")). In letter briefs dated April 2 and 6, 2020 (Dkt. #82, 84), the Government expressed its non-opposition to Villanueva's motion and echoed many of defense counsel's arguments:

> *First*, Villanueva has served the vast majority of his sentence, and only has approximately 30 days left to serve. *Second*, although Villanueva pled guilty to serious crimes, his crimes were not violent in nature, and he does not appear to pose a risk of violence to the community. *Third*, given that Villanueva's expected release date is May 4, 2020, if Villanueva is required to wait 30 days before seeking relief from the Court, he would be eligible for relief just days before his release date — in other words, requiring exhaustion in this particular case would effectively nullify the ability to obtain the relief sought. *Fourth*, as noted in the PSR, Villanueva has a history of asthma (PSR ¶ 86), and is therefore at higher risk for severe illness resulting from COVID-19, according to guidance provided by the Centers for Disease Control and Prevention.

(Dkt. #84 at 3-4 (footnote omitted)).

## DISCUSSION

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States* v. *Gotti*, No. 02 Cr. 743 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020); *accord United States* v.

3

*Monzon*, No. 99 Cr. 157 (DLC), 2020 WL 550220, at *1 (S.D.N.Y. Feb. 4, 2020). One such statutory provision, known as the compassionate release provision, specifies in relevant part:

> c) The court may not modify a term of imprisonment once it has been imposed except that —
>
> (1) in any case —
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that —
>
> (i) extraordinary and compelling reasons warrant such a reduction ….

18 U.S.C. § 3582(c)(1)(A)(i).

Of potential note, the compassionate release provision was amended by the First Step Act of 2018 to permit defendants, and not merely the BOP, to make such motions under certain circumstances. *See* First Step Act of 2018, Pub. L. 115-391, § 603, 132 Stat. 5194, 5239 (2018). As courts in this District have observed, the amended provision reflects a balance struck between "competing congressional objectives." *United States* v. *Russo*, No. 16 Cr. 441 (LJL), Dkt. #54 at 4 (S.D.N.Y. Apr. 3, 2020). On the one hand, the statute includes an exhaustion requirement in recognition of the fact that the "BOP is

4

frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan." *Id.* On the other hand, the statute itself provides an exception to this exhaustion requirement, permitting a defendant to seek judicial review — even if he has not yet fully exhausted his administrative rights — where 30 days have elapsed from the warden's receipt of the defendant's request. This built-in exception to the statutory exhaustion requirement "unquestionably reflects congressional intent for the defendant to have the right to a meaningful and prompt judicial determination of whether he should be released." *Id.*

The instant motion is one of many filed by sentenced defendants in federal custody who are understandably worried about (and at particular medical risk for) contracting COVID-19. These motions seek immediate relief, recognizing the speed with which the virus spreads, the impracticability of social distancing in federal prison, and the marked deficiencies in hygiene and medical care in prison. This case is, in the Court's experience, one of comparatively few in which the Government does not oppose the motion. And while it would be easy for the Court to co-sign what is effectively a joint request of the parties, it must first address an issue common to nearly all of these motions — namely, whether the Court has the ability to overlook a defendant's failure to exhaust administrative remedies. (*See* Def. Br. 3-4 (arguing that the Court has the power to waive the exhaustion requirement)).

The Court recognizes that thoughtful judges in this District have come to different conclusions on the point. *Compare, e.g., United States* v. *Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *4 (S.D.N.Y. Apr. 6, 2020) (concluding that courts may not excuse or overlook the exhaustion requirement: "The Court expresses the hope that the BOP will state its position in a reasoned determination of Woodson's application. If the BOP anticipates that it will be unable to address the merits of Woodson's application, it should deny his application now and thereby open his pathway to seek judicial relief. For the agency to make the advance decision to allow the 30-day window to run out, but not to act to deny the application would be irresponsible.") (collecting cases), *with United States* v. *Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020) (concluding that exhaustion requirement can be excused: "The Court concludes that requiring [the defendant] to exhaust administrative remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate."). It has spent much time considering the arguments, and the judicial decisions, on both sides. For the reasons set forth in the following paragraph, this Court need not finally decide the issue in this case. However, after considering the arguments it has received to date, the Court is inclined to align itself with the *Woodson* court, and with its many colleagues who have concluded that courts lack the authority to waive the administrative exhaustion requirement stated in § 3582(c)(1)(A). *See also, e.g., United States*

v. *Gross*, No. 15 Cr. 769 (AJN), 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020) ("However, the Court is skeptical that the First Step Act admits of such exception to its statutory exhaustion requirement."); *United States* v. *Lowry*, No. 18 Cr. 882 (LTS), 2020 WL 1674060, at *2 (S.D.N.Y. Apr. 6, 2020) ("Thus, while he clearly is eligible for, and has been approved for, release under the BOP's administrative policy, he is not facially eligible for compassionate release under the statutory provision."); *United States* v. *Weiland*, No. 18 Cr. 273 (LGS), 2020 WL 1674137, at *1 (S.D.N.Y. Apr. 6, 2020) ("WHEREAS Defendant is incorrect that the Court has authority to waive the administrative exhaustion requirements stated in § 3582....").

As noted, the failure to exhaust in this case is not fatal to Villanueva's motion. The Government argues, and the Court agrees, that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, but rather is a claims-processing rule that the Government can waive by failing to raise an exhaustion argument. (*See* Gov't Br. 2-3 (collecting cases)). *See generally Coleman* v. *Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 203 (2d Cir. 2007) ("Recently, however, the Supreme Court has admonished lower courts to more carefully distinguish between jurisdictional rules and mandatory claims-processing rules, the latter being subject to waiver and forfeiture[.]" (internal citations and quotations omitted)); *cf. Eberhart* v. *United States*, 546 U.S. 12, 16 (2005) (per curiam) ("'Clarity would be facilitated' ... 'if courts and litigants used the label "jurisdictional" not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons

(personal jurisdiction) falling within a court's adjudicatory authority.'"). To its credit, the Government has determined to waive the exhaustion requirement in this case. (Gov't Br. 3). The Court therefore need not decide whether it also has the power to excuse non-compliance, and under what circumstances it has that power, and instead proceeds to consider the merits of Villanueva's request.

In a recent opinion, this Court framed the analysis for determining whether "extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In particular, in *United States* v. *Lisi*, the Court observed:

> The relevant policy statement is found in U.S.S.G. § 1B1.13, which states in pertinent part that
>
> [T]he court may reduce the term of imprisonment if ... the court determines that [e]xtraordinary and compelling reasons warrant the reduction; ... [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [t]he reduction is consistent with this policy statement.
>
> U.S.S.G. § 1B1.13(1)(A), (2), and (3). Additionally, the court must "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

*United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020), *reconsideration denied*, No. 15 Cr. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020). Both prongs are satisfied in this case.

8

The present circumstances are unprecedented, as a sister court in this District has recognized in a case involving health issues identical to those faced by Villanueva:

> It is readily apparent — and the Court here finds — that the circumstances presented here are extraordinary and compelling so as to justify compassionate release in [the defendant's] case. The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration. COVID-19 presents a heightened risk for incarcerated defendants like [the defendant] with respiratory ailments such as asthma. The Centers for Disease Control warns that persons with asthma are at high risk of serious illness if they contract the disease. Further, the crowded nature of municipal jails such as the facility in which [the defendant] is housed present an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.

*United States* v. *Hernandez,* No. 18 Cr. 834-04 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (collecting cases).

The Court further agrees with the parties that granting Villanueva's motion would not run afoul of the sentencing factors set forth in § 3553(a). Villanueva has served a sentence that balances the seriousness of his criminal conduct with his marked acceptance of responsibility. His prior criminal history does not disclose a propensity for violence. His remaining term of incarceration is short. And his medical conditions place him at a higher risk for developing serious medical complications were he to contract COVID-19. Villanueva and his counsel have also put forward a plan for his reentry into society. Specifically, Villanueva's partner, Emma Lava, has agreed that

Villanueva may stay with her at her residence at 600 Pelham Road, New Rochelle, New York. (Def. Br. 7).

In sum, the Court agrees with the parties that current circumstances merit compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The Court GRANTS Villanueva's motion as follows: The Court modifies Villanueva's previously-imposed concurrent terms of imprisonment on Counts One, Two, and Three of Information S3 18 Cr. 472 (KPF) of time served plus three months to **time served**. The Court further orders that the BOP release Villanueva immediately, and without regard to any quarantine provisions that might otherwise be applied, in order to reside at the New Rochelle address, because a release plan for Villanueva is already in place. The conditions of supervised release originally imposed on February 5, 2020, will now go into effect.

The Court concludes by noting that this Order reflects its agreement with the parties' argument that Villanueva would be safer from COVID-19 at home than at the MCC. It fully expects that Villanueva will maintain, on release, the same concerns for his health and safety — and the health and safety of the community he is now reentering — that were expressed so well by his counsel in the compassionate release motion.

SO ORDERED.

Dated: April 8, 2019
       New York, New York

*Katherine Polk Failla*
KATHERINE POLK FAILLA
United States District Judge